**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.**



Russ Kendig
United States Bankruptcy Judge

**Dated: 01:29 PM January 30, 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| JIMMIE L. WILLAMS, JR., | ) | CASE NO. 14-61924 |
| | ) | |
| Debtor. | ) | ADV. NO. 14-6053 |
| _____ | ) | |
| | ) | JUDGE RUSS KENDIG |
| PHOENIX FINANCIAL | ) | |
| SOLUTIONS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM OF OPINION (NOT** |
| v. | ) | **INTENDED FOR PUBLICATION)** |
| | ) | |
| JIMMIE L. WILLIAMS, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

At issue before the court is the dischargeability of a debt relating to a personal check that was later the subject of a stop order between Jimmie L. Williams, Jr. ("Debtor") and Phoenix Financial Solutions, Inc. ("Phoenix"), assignee of Graham Dealership Companies ("Graham"). Phoenix moves for summary judgment seeking to deny Debtor's bankruptcy discharge on its $5,895.57 claim related to the "bad check." Debtor disagrees, stating that he did not have the intent necessary when writing or placing a stop order on the personal check to justify the denial of his bankruptcy discharge.

1

The court has jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference dated April 4, 2012. In accordance with 28 U.S.C. § 1409, venue in this district and division is proper. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I) and (O).

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

**Facts**

This adversary proceeding arises out of a dispute surrounding Debtors payment for car repairs made by Graham on Debtor's 2007 Honda Accord. Graham is a car dealership located in Mansfield, Ohio that also operates a maintenance department. In January of 2013 Debtor brought his Honda Accord to Graham for maintenance. Graham diagnosed significant engine problems necessitating repairing and replacing a cylinder head and head gasket. Graham billed $2,159.83 for the repair, which Debtor paid for via a personal check on January 28, 2013. However, around February 1, 2013, before Graham could deposit the check, Debtor put a stop payment request on the check. Graham has yet to receive full payment from Debtor.

The facts contained in the above paragraph and undisputed, but the parties disagree on essentially all other material information. The remainder of this paragraph represent Debtor's story. When Debtor initially retrieved his vehicle from Graham and issued the disputed personal check, the vehicle was working properly. However, the very next day, Debtor's vehicle started to suffer significant mechanical problems. Debtor called Graham about the issue, and Graham agreed to provide additional repairs free of charge. However, even after the additional repairs, Debtor's vehicle still did not operate properly. At this point, Debtor informed Graham he was placing a stop order on the January 28, 2103 personal check based on the sub-standard repairs. Having lost faith in Graham's maintenance department, Debtor took his vehicle to another dealership, who informed him that his vehicle's engine was beyond repair and needed to be completely replaced. Luckily for Debtor, the engine was under warranty and was replaced at an out-of-pocket cost of only $148.15. The court has no information on why Debtor's vehicle warranty was not used to pay the repairs completed by Graham.

Having already reiterated Debtor's alleged facts, the following paragraph presents Phoenix's side of the story. After completing Debtor's January 28, 2013 repairs, Graham took Debtor's vehicle on a test drive and noticed no problems. Graham's next record of any repair on a Debtor-owned vehicle occurred approximately four months later, meaning Graham has no record of the free repairs provided to Debtor around the end of January 2013. Graham also has no record of Debtor's telephone call about a stop order being placed on the January 28, 2013 check. After being unable to collect, Graham hired Phoenix to collect on Debtor's account.

Phoenix initiated a civil case in the Municipal Court of Mansfield, Ohio seeking a $5,674.49 judgment against Debtor under the Ohio Revised Code. While Debtor did make payments of $480.00 towards the January 28, 2013 repairs, Phoenix's civil case seeks treble damages and attorney's fees. Before the Municipal Court could decide the dispute, Debtor filed for bankruptcy protection, shifting the case to this court.

2

Law & Analysis

Phoenix's motion for summary judgment seeks a determination that any debt associated with Debtor's use of a "bad check" be deemed nondischargeable under § 523(a)(2)(A), (a)(2)(B), or (a)(4). Each of these sections seeks to deny a debtor's bankruptcy discharge for debts obtained via misrepresentations, fraud, larceny, or other similar bad acts. Because the primary purpose of bankruptcy is to grant a "fresh start to the honest but unfortunate debtor," denying a discharge to the dishonest debtor is consistent with bankruptcy policy. Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367 (2007) (internal quotation marks omitted). However, because the bankruptcy discharge is central to a "fresh start," discharge exceptions "should be construed strictly against the creditor and liberally in favor of the debtor [while recognizing] that a discharge in bankruptcy is a privilege, not a right, and should only inure to the benefit of the honest debtor." Sheehan & Assocs. PLC v. Lowe, 2012 WL 3079251, at *3 (E.D. Mich. 2012); see also Keeney v. Smith (In re Keeney), 227 F.3d 679, 683 (6th Cir. 2000). The party seeking to deny discharge, Phoenix in the current case, bears the burden of proof on each element by a preponderance of the evidence. Rembert v. AT & T Universal Card Servs., Inc., 141 F.3d 277, 281 (6th Cir. 1998).

The current dispute is before the court on Phoenix's motion for summary judgment. A court will grant summary judgment "if the movant shows that there is no genuine dispute to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(a); Muncie Power Prods., Inc. v. United Techs. Auto., Inc., 328 F.3d 870, 873 (6th Cir. 2003). When making such a determination, all facts and reasonable inferences should be made in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, 477 U.S. 242, 250 (1986).

Phoenix's motion for summary judgment asserts claims under: § 523(a)(2)(A), which prohibits discharge for debts obtained by "false pretenses, a false representation, or actual fraud;" § 523(a)(2)(B), which prohibits discharge for debts obtained through false written statements regarding a debtor's financial position published with an intent to induce a party to extend credit; or § 523(a)(4), which prohibits discharge for debts obtained through "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." The court will address each claim.

**I.      Phoenix Is Not Entitled to Summary Judgment Under § 523(a)(2)(A)**

Phoenix's first claim is under § 523(a)(2)(A), which denies a debtor's discharge for any debt "for money, property, services, or any extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." While Phoenix's motion for summary judgment is not completely clear, it appears to argue for the denial of discharge based on false representations or actual fraud.

To show a false representation under § 523(a)(2)(A), the party seeking to deny discharge must prove each of the following elements: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness to

3

its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance is the proximate cause of the loss." Rembert, 141 F.3d at 280–81. A debtor's intent to deceive is measured by a subjective standard based on the totality of the circumstances. Id. at 281; Tillimon v. Mack (In re Mack), 2013 WL 3822075, at *4 (Bankr. N.D. Ohio 2013). A finding of fraudulent intent may be inferred from the circumstances of the case, as direct proof of fraudulent intent is rarely found. Hamo v. Wilson (In re Hamo), 233 B.R. 718, 724 (B.A.P. 6th Cir. 1999).

It is well established that the writing of a check is not a representation that the check's author has the funds necessary to cover that check. Williams v. United States, 458 U.S. 279, 284 (1982); Stewart v. E. Tenn. Title Ins. Agency, Inc. (In re Union Sec. Mortg. Co.), 25 F.3d 338, 341 (6th Cir. 1994); Busch, Inc. v. Grilliot (In re Grilliot), 293 B.R. 725, 731 (Bankr. N.D. Ohio 2002). The Supreme Court has explained that a check only directs a bank to pay the face amount to the bearer, while requiring the check's author to pay the obligation if the bank account has insufficient funds. Williams, 458 U.S. at 284–85. Therefore, "a check is not a factual assertion at all, and therefore cannot be characterized as 'true' or 'false'" Id. Similarly, the Sixth Circuit has stated that "[s]ince a check does not make any representations, it cannot make any *mis* representations." Stewart, 25 F.3d at 341. Therefore, simply writing a check is insufficient, as a matter of law, to be a material misrepresentation under § 523(a)(2)(A). In re Mack, 2013 WL 3822075, at *4; In re Grilliot, 293 B.R at 730–31; Spa Cover, Inc. v. Hatley (In re Hatley), 2009 WL 5205385, at *3 (Bankr. E.D. Tenn. 2009).

A bankruptcy discharge can also be denied for actual fraud under § 523(a)(2)(A). "Actual fraud has been defined as intentional fraud, consisting in deception intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed. It requires intent to deceive or defraud." Mellon Bank, N.A. v. Vitanovich (In re Vitanovich), 259 B.R. 873, 877 (B.A.P. 6th Cir. 2001) (internal quotations marks omitted). As noted above, the Sixth Circuit has determined that a check, by itself, is not a representation, and therefore cannot indicate fraud. Stewart, 25 F.3d at 341; Energy Mktg. Corp. v. Sutton (In re Sutton), 39 B.R. 390 (Bankr. M.D. Tenn. 1984); In re Grilliot, 293 B.R. at 731. However, the passing of a bad check, when combined with other evidence, may show actual fraud. In re Grilliot, 293 B.R. at 731; In re Hatley, 2009 WL 5205385, at *3 ("To set forth a claim under § 523(a)(2)(A) based on a worthless check, some representation that there are sufficient funds to cover the check must be made at the time the check is issued."). Phoenix argues that Debtor's writing of a check to Graham, and then placing a stop order on the check only a few days later, evidences Debtor's fraudulent intent. However, Debtor insists that the stop order was placed only after Graham's repairs proved insufficient. There exist material issues of fact regarding Debtor's intent that are inappropriate for summary judgment.

Phoenix's also argues that Ohio Revised Code § 2913.11(B) creates a presumption that putting a stop payment order on a check constitutes fraud. However, the court need not determine whether the Ohio statute creates such a presumption. The denial of a bankruptcy discharge is a matter of federal law not bound by any state statute. In re Hatley, 2009 WL 5205385, at *4; Capitol Chevrolet v. Bullock (In re Bullock), 322 B.R. 176, 180–81 (Bankr. M.D. Ala. 2005). For example, in In re Hatley, a Tennessee bankruptcy court was evaluating a state statute that allowed fraudulent intent to be inferred from any "bad check" that was not

4

remedied within ten days. 2009 WL 5205385, at *3–4. However, because the Bankruptcy code is federal law, state law presumptions may not be used to establish nondischargeability in bankruptcy. Id. at *4; see also Grogan v. Garner, 498 U.S. 279, 284 (1991); In re Rembert, 141 F.3d at 281 ("A finding that a debt is non-dischargeable under § 523(a)(2)(A) requires a showing of actual or positive fraud, not merely fraud implied by law."); Tusco Grocers, Inc. v. Coatney (In re Coatney), 185 B.R. 546, 549 (Bankr. N.D. Ohio 1995). Any State of Ohio fraud presumption for passing a "bad check" is insufficient to deny Debtor's discharge, leaving disputed material facts not appropriate for summary judgment.

## II.   Phoenix Is Not Entitled to Summary Judgment Under § 523(a)(2)(B)

Section 523(a)(2)(B) denies a bankruptcy discharge "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . the use of a statement in writing– (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor cause to be made published with intent to deceive." Under the first element, a writing is materially false if it "paints a substantially inaccurate picture of a debtor's financial condition by misrepresenting information of the type which normally would affect the decision to grant credit." Midwest Cmty. Fed. Credit Union v. Sharp (In re Sharp), 357 B.R. 760, 765 (Bankr. N.D. Ohio 2007); see also In re Mack, 2013 WL 3822075, at *3–4; Bednarsz v. Brzakala (In re Brzakala), 305 B.R. 705, 709–10 (Bankr. N.D. Ill. 2004). As noted above, the Supreme Court and Sixth Circuit have both decided that a check does not make any representations, and therefore cannot make misrepresentations. Williams, 458 U.S. at 284; Stewart, 25 F.3d at 341. Debtor's January 28, 2013 personal check is not a materially false writing, and Phoenix has not alleged other writings that satisfy the § 523(a)(2)(B) requirements. Phoenix's motion for summary judgment under § 523(a)(2)(B) is denied.

## III.  Phoenix Is Not Entitled to Summary Judgment Under § 523(a)(4)

Phoenix also asks the court to deny Debtor's discharge under § 523(a)(4), which denies discharge for debts generated via "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Phoenix's motion for summary judgment only addresses larceny, and therefore the court will not address fraud, defalcation, or embezzlement. See Peak v. Kubota Tractor Corp., 559 F. App'x 517, 525 (6th Cir. 2014); Cone v. Stark Cnty. Bd. of Comm'rs, 2013 WL 6212221, at *2 (N.D. Ohio 2013). Larceny is essentially the theft of personal property, defined as "the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's use without the consent of the owner." Altercare of Navarre Ctr. for Rehab. & Nursing Care v. Donley (In re Donley), 2014 WL 1577236, at *11 (Bankr. N.D. Ohio 2014) (internal quotations marks omitted).

Phoenix's first argument is that the Ohio Revised Code makes an unremedied stop order placed on a personal check a theft offense, satisfying larceny under § 523(a)(4). Phoenix cites to In re Howell in support of this position, but the case is easily distinguishable. The court in In re Howell applied collateral estoppel to a state court judgment that specifically found that the debtor passed a bad check without the intent to pay. 2010 WL 4315042, at *2 (Bankr. N.D. Ohio 2010). The bankruptcy court then applied collateral estoppel to find that the debtor acted with

5

fraudulent intent sufficient to deny a bankruptcy discharge. <u>Id.</u> Therefore, the bankruptcy court's conclusion was not based on any statutory presumption of fraudulent intent or larceny, but instead a state court's expressed finding of fraud based on specific facts. <u>Id.</u> at *2–3; see also <u>In re Mack</u>, 2013 WL 3822075, at *6. In the current case, a state court has not found that Debtor acted with fraudulent intent. Instead, Phoenix is attempting to rely on state law presumptions, which the court has determined are insufficient. Disputed material facts remain surrounding Debtor's intent when issuing the January 28, 2013 personal check.

      Phoenix's final argument is that Debtor's acceptance of an agreement to make installment payments on the "bad check" debt, and subsequent default on that agreement, constitutes Debtor's acknowledgement of a theft offense. Phoenix cites no legal authority for the position outside of state law presumptions the court previously rejected. The court also notes policy and practical difficulties in Phoenix's position. If agreeing to make installment payments on a debt, and then failing to follow through on those payments, constitutes fraudulent intent, then very few debts would ever be dischargeable through bankruptcy. Such a position is clearly at odds with Congressional intent that the bankruptcy discharge be construed liberally in a debtor's favor. <u>Marrama</u>, 549 U.S. at 367; <u>In re Keeney</u>, 227 F.3d at 683. The court finds Phoenix's position untenable and rejects it. Phoenix is not entitled to summary judgment under § 523(a)(4).

## Conclusion

      Based on the foregoing, Phoenix's motion for summary judgment is **DENIED**. An order will be entered simultaneously with this opinion.

      It is so ordered

                                                 #      #      #

**Service List**:

**Phoenix Financial Solutions, Inc.**
P.O. Box 232
Shelby, OH 44875

**James L Blunt, II**
3954 Industrial Parkway Dr
Shelby, OH 44875

**Jimmie L. Williams, Jr.**
P.O. Box 1116
Mansfield, OH 44901

**Russell James Long**
Kennedy Purdy Hoeffel & Gernert LLC
111 West Rensselaer Street

PO Box 191
Bucyrus, OH 44820